UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH L. WILLY,

                Plaintiff,                Case No. 2:19-cv-11626
                                            District Judge Robert H. Cleland
v.                                  Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT (ECF No. 24), GRANT DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT (ECF No. 27) and AFFIRM THE COMMISSIONER'S DECISION

**I.    RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's amended motion for

summary judgment (ECF No. 24), **GRANT** Defendant's amended motion for

summary judgment (ECF No. 27), and **AFFIRM** the Commissioner's decision.  I

further recommend **TERMINATING AS MOOT** Defendant's original motion for

summary judgment.  (ECF No. 20).

1

II.    **REPORT**

Plaintiff, Deborah L. Willy, brings this action under 42 U.S.C. §§ 405(g)

and/or 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner") denying her application for disability insurance

benefits (DIB).  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's amended motion for summary

judgment (ECF No. 24), the Commissioner's amended cross-motion for summary

judgment (ECF No. 27), and the administrative record (ECF No. 11).

A.    **Background and Administrative History**

Plaintiff alleges her disability began on March 5, 2016, at the age of 50, (R.

at 196.)  In her disability report, she lists several conditions (PTSD, anxiety,

depression, osteoporosis, Buerger's disease, colitis, incontinence, finger

amputation) as limiting her ability to work.  (R. at 220.)  Her application was

denied in June 2016.  (R. at 38.)  The date last insured is December 31, 2020.  (R.

at 216.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R.

at 120-21, 148.)  On February 21, 2018, ALJ Sarah Zimmerman held a hearing, at

which Plaintiff, Plaintiff's friend and former coworker, Jill Smith, and a vocational

expert (VE), Michele Ross, testified.  (R. at 57-93.)  On June 11, 2018, ALJ

Zimmerman issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 38-50.)

Plaintiff submitted a request for review of the hearing decision.  (R. at 189-95.)  However, on May 6, 2019, the Appeals Council denied Plaintiff's request for review.  (R. at 1-7.)  Thus, ALJ Zimmerman's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 3, 2019.

**B.      Plaintiff's Medical History**

The administrative record contains approximately 479 pages of medical records, which were available to the ALJ at the time of her June 11, 2018 decision. (R. at 366-843 [Exhibits 3F-28F].)  Of particular note are those records which relate to Plaintiff's gastrointestinal issues:

- Treatment records from treating physician Dr. Mohamed Ali (R. at 366-78, 458-60, 574-99, 688-703, 796);

- June 2016 consultative examination with Dr. R. Scott Lazzara (R. at 424-30);

- July 3, 2017 record from motility specialist Dr. Adarsh Varma, including his suspected diagnoses (R. at 679-84);

- August 2017 evaluation and CT Scan by Gastroenterologist Dr. Asad Mehboob (R. at 785-87).

These materials will be discussed in detail, as necessary, below.

**C.      The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) since March 5, 2016, the alleged onset date.  (R. at 40.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  mild degenerative disc disease of the lumbar spine, osteoporosis of the lumbar spine, Buerger's disease with status post partial amputation of the right index finger, urinary incontinence, major depressive disorder, and cannabis dependence.  (R. at 40-42.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 42-43.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work [*i.e., exertional limitations*] . . . except she can lift and/or carry up to ten pounds frequently and up to 20 pounds occasionally.  She can stand and/or walk for eight hours and sit for eight hours during an eight-hour workday.  She can frequently, as opposed to constantly, handle, finger, and feel with the right upper extremity [*i.e., manipulative limitations*]. [She] can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds.  She can frequently stoop.  She can occasionally kneel, crouch,

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

and crawl [*i.e., postural limitations*].  She can never be
exposed to dangerous machinery or hazardous heights
[*i.e., environmental limitations*].  In addition to normal
breaks, she might require one additional restroom break
of five minutes in the morning and one additional
restroom break of five minutes in the afternoon.  She can
frequently interact with supervisors, coworkers, and the
public [*i.e., social interaction limitations*].  In addition to
normal breaks, she might be off-task 5% of the workday.

(*Id*. at 43-48.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (*Id*. at 48.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as machine tender, line attendant, and inspector.  (*Id*. at 49.)  The ALJ

therefore concluded that Plaintiff had not been under a disability, as defined in the

Social Security Act, since March 5, 2016, the date the application was filed.  (*Id*.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

6

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff raises three main claims of error.  First, she asserts that the ALJ

erred by failing to consider fatigue as a medication side effect.   Second, she asserts

that the ALJ erroneously determined that her gastrointestinal Late Dumping

Syndrome and malabsorption were not medically determinable impairments.

Third, she asserts that the ALJ erred in giving treating physician Dr. Ali's opinion

little weight.  (ECF No. 24, PageID.999-1013).  The Commissioner argues, among

other things, that the Commissioner's decision is supported by substantial evidence.

(ECF No. 27, PageID.1044-61).

### 1.    Medication Side Effects

Plaintiff discusses 20 C.F.R. § 404.1529(c)(3)(iv), which provides that the

SSA will consider "[t]he type, dosage, effectiveness, and side effects of any

medication you take or have taken to alleviate your pain or other symptoms[.]"[2]

(*Id.*)  According to Plaintiff, although the ALJ mentioned her medications, the ALJ

---

[2] Plaintiff actually cites "20 CFR 404.1529(**b**)(3)(iv)."  (ECF No. 24, PageID.1000)
(emphasis added).  It is clear that she cited subsection (b) in error because she
specifically refers to the "type, dosage, effectiveness and side effects" language
found in subsection (c), specifically at § 404.1529(**c**)(3)(iv).

failed to "connect the dots" between her medication and fatigue as a side effect. In support of her argument, she points to her statements and notations of fatigue in the record, specifically,

- That her treating physician, Dr. Ali, indicated that dizziness/lightheadedness and fatigue were side effects of her medication in his medical source statement (R. at 796);

- That Dr. Ali recorded fatigue among a list of Plaintiff's reported symptoms in numerous treatment records spanning from April 2015 to May 2017 (*see, e.g.*, R. at 366-78, 590, 594, 596);

- Plaintiff's own hearing testimony in which she stated that her nausea medication, Bentyl and Phenergan, makes her tired (R. at 78) and her function report statement that she experiences fatigue from her Norco and Ativan as well (R. at 261);

- The fact that Plaintiff's Morphine and Norco prescriptions are at the highest possible dose;

- And her co-worker, Ms. Smith's, testimony that Plaintiff would take 30-60-minute unscheduled breaks during their 12.5 hour work shift.[3]

(ECF No. 24, PageID.1000-02).

As a threshold matter, the requirement that the ALJ consider allegations of medication side effects does not mandate their explicit mention in the written decision. *See French v. Commissioner of Social Sec.*, 2016 WL 3951419, at *13

---

[3] At the hearing, Ms. Smith attributed Plaintiff's extended, unscheduled breaks to Plaintiff being sick or nauseous, not feeling tired from medication or otherwise. (*See* R. at 77).

(E.D. Mich. June 30, 2016) (Morris, M.J.); *adopted*, 2016 WL 3924111 (E.D. Mich. July 21, 2016) (Cox, J.); *Burbo v. Comm'r of Soc. Sec.,* 877 F. Supp. 2d 526, 541 (E.D. Mich. 2012) (citing 20 C.F.R. § 404.1529(c)(3)).  Here, the ALJ expressly addressed Plaintiff's fatigue as a side effect of her medication and assigned limitations to account for fatigue.  Specifically, the ALJ acknowledged that Plaintiff "alleges that narcotics and other medications make her fatigued[,]" citing her function report.  (R. at 45).  Plaintiff's fatigue, in combination with her physical limitations, lead the ALJ to assess a "light work" RFC, including a limitation to never be exposed to dangerous machinery or hazardous heights and to be off-task 5% of the workday.  (*Id.*).

Plaintiff cites to the unpublished decision in *Rife v. Comm'r of Soc. Sec.*, 2015 WL 8311682 (E.D. Mich. Dec. 9, 2015) in support of her position that the ALJ's discussion of side effects is inadequate.  In that case, however, the ALJ had exaggerated much of the evidence to conclude that side effects were essentially a non-issue.  For example, the ALJ stated that the plaintiff was able to return to school and to return to work, among other things, to show that side effects did not impact his ability to work.  The evidence, however, only showed that the plaintiff was "going to start school" and his doctor said he may return to work with restrictions temporarily to see if he could tolerate driving.  *Id.* at *3.  Because of

the inconsistencies between the ALJ's decision and the record evidence, the case was remanded for further consideration of side effects.

In this case, there is no indication that the ALJ exaggerated Plaintiff's activities or the evidence, and the ALJ did not simply dismiss Plaintiff's allegations of side effects.  Rather, the ALJ accounted for the side effects by limiting her to light work rather than the medium level work she had been performing as an LPN.   Because the ALJ explicitly addressed side effects, the case should not be remanded on this issue.

Moreover, Plaintiff has pointed to no objective medical evidence that would suggest greater limitations caused by her fatigue, or to support her complaint of fatigue as a side effect.  Plaintiff points to Dr. Ali's treatment records.  Dr. Ali recorded fatigue among a list of Plaintiff's *subjective* statements of her symptoms in many treatment records.  (*See* R. at 366-78, 590, 594, 596).  But there is no indication from these records whether the fatigue was reported as a side effect of medication or for some other reason (for example, lack of sleep).  Either way, these are subjective statements, not objective records of fatigue as a side effect, and these records do nothing to show what limitations, if any, she would need to account for the fatigue that are not already included in the RFC.

The record also contains Dr. Ali's opinion in which he noted that Plaintiff experienced fatigue and dizziness/lightheadedness as a side effect.  (R. at 796).  He

did not attribute any limitations to the side effects, however.  Dr. Ali opined that

Plaintiff would need two to four unscheduled breaks every workday, but attributed

those breaks to nausea, diarrhea, and severe abdominal pain, not fatigue or

dizziness.   Thus, Dr. Ali's opinion does not constitute objective evidence that

Plaintiff's side effects impact her ability to work, but only that she experiences side

effects.  And, the ALJ appropriately discounted Dr. Ali's opinion, discussed further

below.

Aside from Dr. Ali's opinion—which does not really provide evidence of

limitations caused by side effects—Plaintiff has pointed to no other objective

medical evidence in support of limitations due to side effects.  For this additional

reason, Plaintiff's claim of error fails.  *See, e.g., Farhat v. Sec'y of Health and

Human Servs.*, 972 F.2d 347 (Table), 1992 WL 174540, at *3 (6th Cir. July 25,

1992) ("In addition, Farhat's allegations of the medication's side-effects must be

supported by objective medical evidence. There is no objective medical evidence

supporting Farhat's allegations that the medicine makes him so drowsy and

requires him to rest to such an extent that he is unable to work.... Therefore, in light

of the lack of objective medical evidence supporting Farhat's claims of side-effects,

the ALJ's findings that Farhat is not disabled and can perform other work are

supported by substantial evidence.") (citations omitted); *Donegan v. Sec'y of

Health & Human Servs.*, 1993 WL 291301, at *7 (6th Cir. Aug. 2, 1993) (noting

that no objective medical evidence supported claimant's allegations that his medication made him so drowsy that he was unable to work).

### 2.    Severe Impairment/Step Two

Plaintiff argues it was reversible error for the ALJ to fail to consider either her "suspected Late Dumping Syndrome" or malabsorption to be a severe impairment at Step 2 of the sequential analysis.  She believes her gastrointestinal issues are the "main source of difficulty interfering with her ability to work." (ECF No. 24, PageID.1003-05).

In addressing Step 2, the ALJ spent two paragraphs discussing Plaintiff's gastrointestinal issues and the suspected Late Dumping Syndrome or malabsorption diagnoses.  (R. at 41-42).  The ALJ concluded that these were non-severe impairments because: (1) the allegations of frequency of symptoms were inconsistent; (2) she continued to take narcotics despite a specialist cautioning her that the narcotics could be causing or making her symptoms worse (R. at 684); (3) she sustained gainful employment for years despite her symptoms; (4) she has only normal objective testing (R. at 475, 476, 787-88); and, (5) there is no evidence of worsening symptoms.  Additionally, as to the two suspected diagnoses, the ALJ concluded that they were non-severe because they were only *possible* diagnoses and, again, objective testing was negative.

"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a *slight abnormality* or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered...." SSR 85-28 (S.S.A. 1985 (emphasis added)).

In support her argument, Plaintiff points to her symptoms of abdominal pain, nausea, and vomiting documented throughout the record, and the diagnoses that were, at the time of the ALJ's decision at least, possible diagnoses rather than confirmed.  (ECF No. 24, PageID.1003).

As discussed below, even if the ALJ erred at Step 2, the error is harmless because she discussed Plaintiff's gastrointestinal issues throughout the decision. Nevertheless, in the interest of thoroughness, I will address the ALJ's decision that these issues are not severe impairments.  Of particular note is the fact that Plaintiff continued to work *until her position was eliminated* in 2016, despite her suffering abdominal pain, nausea, and vomiting beginning well before that time and without any evidence of worsening of these symptoms.  Plaintiff's ability to work suggests

13

that these issues did not more than minimally affect her ability to work.  In

addition, objective examination of her abdomen/gastrointestinal system were

normal or noted only mild tenderness, (*see* R. at 427, 460, 576, 584, 588, 690, 694,

779), and endoscopies and CT scans were normal or unremarkable (R. at 473, 476,

787).  This evidence does not suggest more than a minimal effect on ability to

work.

Regarding the "Late Dumping Syndrome" or malabsorption, as the ALJ

noted, these were not confirmed diagnoses at the time of the ALJ's decision.  In

July 2017, Dr. Varma provided a "problem list" of *possible* diagnoses to explain

Plaintiff's continued diarrhea, nausea and vomiting.  Included in the list are

"suspected Late Dumping Syndrome" and "Query Malabsorption."  (R. at 684).  In

addition, Dr. Varma also questioned if her symptoms could be caused by hepatic

cysts or polypharmacy.  At the time of the ALJ's decision, none of these possible

diagnoses was confirmed.[4]  It was reasonable for the ALJ to not credit a *possible*

---

[4] In September 2018, after the ALJ's decision, Dr. Varma formally diagnosed Late
Dumping Syndrome.  (R. at 13).  As before, she was advised to alter her diet to
treat the condition.  Plaintiff cites to these updated records later in her argument.
(ECF No. 24, PageID.1008-09).  I do not treat these more recent medical records
as part of the record for consideration because they were created after the ALJ's
decision and Plaintiff does not argue that the case should be remanded for
consideration of this evidence.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96
(6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by
some effort at developed argumentation, are deemed waived.  It is not sufficient for
a party to mention a possible argument in the most skeletal way, leaving the court
to ... put flesh on its bones.").

diagnosis, among others, as a severe impairment, or to conclude that the existence of a diagnosis alone implied a more than minimal impact on ability to work.

It is clear that Plaintiff experiences gastrointestinal symptoms, and there is testimony to the effect that Plaintiff took extra breaks at work to deal with these symptoms. Still, even if I were to conclude that the ALJ erred by not considering gastrointestinal issues or Late Dumping Syndrome/malabsorption specifically to be a severe impairment, the error is harmless. "According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined above." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). "The fact that some of [a claimant's] impairments were not deemed to be severe at step two is . . . legally irrelevant" where other impairments are found to be severe. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Put another way, "where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision." *Sheehy v. Comm'r of Soc. Sec.*, No. 1:15-CV-001, 2015 WL 6394780, at *4 (W.D. Mich. Oct. 21, 2015) (citing *Maziarz*, 837 F.2d at 244); *see also Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020).

The ALJ did consider the entire record in rendering her decision.  After Step 2, in addition to discussing Plaintiff's other impairments, the ALJ continued to discuss the gastrointestinal issues and the medical evidence related to them.  (*See* R. at 44, 46-48).  Plaintiff acknowledges the "harmless error" authority just cited, but asserts that if the ALJ's reasoning behind finding a condition nonsevere is flawed, then the ALJ committed reversible error.  (ECF No. 24, PageID,1005, Ex. A).  This simply is not so.  Indeed, the authority she cites found error at Step 2 because the ALJ *did not* address the nonsevere impairments at the remaining steps, unlike the ALJ in this case.  Because the ALJ continued with the analysis after Step 2 and considered the entire record while doing so, any error at Step 2 is harmless.

### 3.    Treatment of Dr. Ali's Opinion

Plaintiff's last point of error is that the ALJ failed to provide good reasons for discounting Dr. Ali's opinion in accordance with the treating physician rule. Plaintiff argues that the ALJ's conclusion that the gastrointestinal work-up was normal is incorrect in light of her history of issues and Dr. Varma's list of possible diagnoses.  (ECF No. 24, PageID.1007-13).  The Commissioner argues that the ALJ supportably discounted the opinion because there is no objective medical evidence or diagnosis to support the disabling opinion.  (ECF No. 27, PageID.1058-61).

### a.     Treating source opinion evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 404.1527(b). The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).[5] For claims filed before March 27, 2017, such as this one, "the Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Martin v. Colvin*, 207 F.Supp.3d 782, 788 (S.D. Ohio 2016) (quoting *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013)). "In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers." *Id.*

Under the regulations, a treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). The ALJ generally gives deference to the opinions

---

[5] The cited regulations remain in effect for claims filed before March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 404.1527.

of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone. . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.[6] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of

---

[6] An exception exists for treating source opinions on issues that are reserved to the Commissioner, which "are never entitled to controlling weight or special significance." S.S.R. 96-5p, 61 FR 34471-0, at *34473. Examples of issues reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past relevant work;
> 4. How the vocational factors of age, education, and work experience apply; and
> 5. Whether an individual is "disabled" under the Act.

*Id.*

> examination, the nature and extent of the treatment
> relationship, supportability of the opinion, consistency of
> the opinion with the record as a whole, and the
> specialization of the treating source—in determining
> what weight to give the opinion.

*Id.*; *see also* 20 C.F.R. § 404.1527(c).

However, while an ALJ must "always give good reasons in [the ALJ's]

notice of determination or decision for the weight [the ALJ] give[s] your treating

source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the

treating source's medical opinion and the reasons for that weight," *Friend v.

Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (*per curiam*) (internal

quotation omitted), there is no *per se* rule that requires a written articulation of

each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§

404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x

216, 222 (6th Cir. 2010). In other words, the regulations do not require "an

exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x

802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)). Nevertheless, the Sixth

Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let
> claimants understand the disposition of their cases,"
> particularly in situations where a claimant knows that his
> physician has deemed him disabled and therefore "might
> be especially bewildered when told by an administrative

19

> bureaucracy that she is not, unless some reason for the
> agency's decision is applied." *Snell v. Apfel*, 177 F.3d
> 128, 134 (2d Cir. 1999). The requirement also ensures
> that the ALJ applies the treating physician rule and
> permits meaningful review of the ALJ's application of
> the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.

### b. Discussion

Dr. Ali completed a medical source statement in January 2018 in which he

opined that Plaintiff would experience diarrhea 2-4 times during the day and 1-2

times at night, she would need to take 2-4 unscheduled breaks during an eight-hour

workday, and that she would miss work more than three times per month. (R. at

711). Dr. Ali listed her diagnoses as "complication post bariatric surgery,"

"dumping syndrome," "weight loss," "recurrent nausea," "multiple herniated

discs," among other things. He also listed dizziness/lightheadedness and fatigue as

side effects of her medication.

After recognizing Dr. Ali as Plaintiff's primary care physician earlier in the

decision, the ALJ gave Dr. Ali's opinion "little weight," stating:

> Dr. Ali's opinion is inconsistent with the objective
> findings made by two treating gastroenterologists in
> 2017. All work-up was normal. They did not diagnose
> the claimant with any condition that could cause her
> alleged symptoms (19F; 25F). Rather, they suggested that
> the narcotics Dr. Ali was prescribing could be causing
> her abdominal pain (I0F/6). Dr. Ali appears to base his

20

> opinion entirely on the claimant's subjective allegations
> rather than any objective evidence. Therefore, the
> undersigned accords this opinion little weight.

(R. at 47).

I note first that the ALJ complied with the requirement to consider the

relationship between Plaintiff and Dr. Ali by identifying Dr. Ali as Plaintiff's

primary care physician.  The ALJ did not discuss the length of the relationship, but

cited to and discussed Dr. Ali's treatment records which span from 2013-2018.

Failing to note the length of the treatment relationship, by itself, is not reversible

error, particularly where the acknowledged record demonstrates the longevity.

The ALJ also cited the opinion's inconsistency with, and lack of support

from, the objective medical evidence in the record.  Plaintiff complains that the

ALJ took too narrow a view of her *suspected* diagnoses when she decided not to

credit Dr. Ali's opinion, which is based in part on suspected Late Dumping

Syndrome.  I find, however, that substantial evidence supports the ALJ's decision.

Moreover, the question of how wide or narrow of a view should be taken in this

context is inherently a discretionary one, well within the ALJ's "zone of choice."

*See Buxton v. Halter*, 246 F.3d 762, 772-773 ("The findings of the Commissioner

are not subject to reversal merely because there exists in the record substantial

evidence to support a different conclusion….  This is so because there is a 'zone of

choice' within which the Commissioner can act without the fear of court

interference.") (citation omitted); *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.").

At the time the ALJ rendered her decision, the evidence before her was indeed inconsistent with Dr. Ali's disabling opinion. Again, the record contains normal or relatively unremarkable objective abdominal examinations, including those conducted by Dr. Ali (R. at 427, 460, 544, 576, 584, 588, 690, 694, 779); normal or unremarkable objective testing including CT scans of the abdomen and endoscopy from 2011 and 2017 (R. at 473, 476, 787); and a list of only suspected or possible diagnoses each different from the next, including Late Dumping Syndrome (for which she was advised to change her diet but did not do so), hepatic cysts, and polypharmacy (i.e. narcotics playing a role in her symptomatology, but Plaintiff did not take steps to reduce her narcotic use until around the time of the administrative hearing) (R. at 684). Even if Plaintiff had been formally diagnosed with Late Dumping Syndrome, that diagnosis alone does not itself suggest that Plaintiff is precluded from all work activity. Dr. Varma, the specialist who provided the list of suspected diagnoses, advised Plaintiff to eat less processed sugars, eat smaller meals, chew her food adequately, and take in small amounts of liquids with meals to treat Late Dumping Syndrome. (R. at 684). Therefore, the

diagnosis alone – if it had been made – along with the suggested diet change, do not demonstrate that Plaintiff would require 2-4 unscheduled breaks each workday for abdominal pain, nausea, or vomiting.  In short, the objective medical evidence—all of which was cited by the ALJ—does not suggest that Plaintiff is disabled.

Plaintiff's history, as discussed by the ALJ, also does not demonstrate that Plaintiff's gastrointestinal problems are disabling, contrary to Dr. Ali's opinion. After 2011, Plaintiff did not seek medical treatment for these issues until 2017. She worked full-time as an LPN until March 2016, despite her symptoms.  (R. at 65-66).  She left her job not for medical reasons, but because her position was eliminated.  (R. at 41, 46, 221).   She alleges her disability began on March 5, 2016, before seeking treatment again.  It was not unreasonable for the ALJ to consider the fact that Plaintiff worked during the time she experienced symptoms and did not seek specialized treatment until 2017, well after her alleged disability onset date (and as the ALJ noted, there is no evidence of worsening symptoms after she lost her job (R. at 41)).[7]

_____

[7] The ALJ discussed Plaintiff's history and the medical evidence elsewhere in the decision, although not necessarily in her the assessment of the opinion evidence. This is not error as it is proper to read the ALJ's decision as whole.  *See Athey v. Comm'r of Soc. Sec.*, 2014 WL 4537317 at *4 (E.D. Mich. 2014); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision).

Further, the ALJ found Plaintiff's subjective complaints not entirely consistent with the medical evidence, a finding she does not expressly challenge, and gave Ms. Smith's testimony only some weight (R. at 48). So, the ALJ was left with an objective medical record that is relatively benign with regard to her gastrointestinal issues and Plaintiff's maintaining gainful employment until the alleged onset date with no evidence of worsening symptoms around or after that date. On this evidence, the ALJ reasonably concluded that Dr. Ali's disabling opinion, which is largely based on Plaintiff's gastrointestinal symptoms, is inconsistent with the objective medical evidence in the record.

The ALJ did not wholly discredit Ms. Smith's and Plaintiff's testimony that Plaintiff would take 30-60 minute breaks during their *12.5-hour shifts* when Plaintiff was working, although I do note that, unlike in the healthcare industry, it is generally more common to work 7 or 8 hour shifts over a five day week (where so much break time might not be needed) and that the ALJ found at Step 4 that Plaintiff was unable to perform her past relevant work as an LPN. (*Id.*) Nor did the ALJ wholly discredit Plaintiff's symptoms of abdominal pain, nausea, diarrhea, and vomiting. But even if these facts constitute substantial evidence in Plaintiff's favor in support of Dr. Ali's opinion, as demonstrated above, the ALJ cited substantial evidence in support of her decision. Again, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists

24

in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). For this reason, the ALJ's decision should not be disturbed.

### F.    Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's amended motion for summary judgment (ECF No. 24), **GRANT** Defendant's amended motion for summary judgment (ECF No. 27), and **AFFIRM** the Commissioner of Social Security's decision. I further recommend **TERMINATING AS MOOT** Defendant's original motion for summary judgment. (ECF No. 20).

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 31, 2020                    s/*Anthony P. Patti*
                                                        Anthony P. Patti
                                                        United States Magistrate Judge

26